FREDERIC E. WEINBERG, Individually and on Behalf of All Others Similarly Situated, Appellant, v HERTZ CORPORATION, Respondent.

First Department, March 11, 1986

## APPEARANCES OF COUNSEL

*Sheldon Burman, P. C.,* for appellant.

*Myron Kirschbaum* of counsel *(Peter M. Fishbein, Donald Levinsohn* and *Christine L. Andreoli* with him on the brief; *Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for respondent.

*Andrea C. Levine* of counsel *(Peter Bienstock* and *Mary Hilgeman* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for State of New York, *amicus curiae.*

## OPINION OF THE COURT

FEIN, J.

This is an action seeking injunctive relief and damages against the Hertz Corporation (Hertz) for acts and practices in the automobile rental business, alleged to be unfair, deceptive and in breach of contract. The allegations before us relate to (1) defendant's service charges for refueling returned rental cars; (2) the daily charges for insurance coverage in the nature of collision damage waiver (CDW) and personal accident insurance (PAI); and (3) the hourly charges added when a vehicle is

returned in New York State beyond the contractual return date.

These charges were variously alleged to be unfair and deceptive, in violation of General Business Law § 349; unconscionably excessive and in bad faith, in violation of UCC 2-302 and 1-201;[1] and in breach of the Hertz rental agreements.

Specifically, plaintiff alleged that defendant's gasoline "refueling service charges" were grossly excessive, resulting in charges in the neighborhood of $1.85 per gallon, which were determined by procedures violative of standards for retail sale of gasoline, established by Federal, State and city statutes and regulations.

The second area of complaint related to defendant's CDW charges. The insurance on a rented vehicle provided collision damage coverage with, in effect, a $1,000 deductible. The customer could obtain full coverage, and defendant would waive the deductible, for an additional charge which, at the commencement of this action, amounted to $6 per day. Extrapolating over an entire year, plaintiff alleged that $2,190 for $1,000 worth of collision damage insurance was an unconscionable premium.

A similar charge of unconscionability was made concerning the $2.25 daily charge for PAI coverage, which figured out to an annual premium of $821.25.

Finally, plaintiff alleged that the charges for returning a vehicle late were exorbitant, permitting defendant to make a full day's extra charge in the first three hours of overtime. Further, defendant's practice allegedly added a full day's CDW and PAI charges, rather than prorating them, for every vehicle returned more than one hour late.

Plaintiff brought this action on behalf of "all those who have rented automobiles from Hertz and were subject to, or had imposed upon them, the illegal charges described [above], within the State of New York." In March 1984, Special Term sustained 6 of the 10 causes of action covering these charges, permitted class action certification with respect to actual damages sought under General Business Law § 349, and permitted limited discovery on the question of the numerosity of the class. We affirmed unanimously, without opinion (105 AD2d 1169).

After discovery and the furnishing of certain documents and

---

1. On this appeal, plaintiff more precisely refers to UCC 1-203.

information by Hertz under a stipulation of confidentiality, plaintiff renewed his motion for class action certification. This appeal is from the denial of that motion.

A class action in this State must satisfy the prerequisites of numerosity, commonality, typicality, adequacy of representation and superiority (CPLR 901 [a]). Special Term based its denial of class action certification on the fifth criterion, which specifies that the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." (CPLR 901 [a] [5].) Special Term ruled that "economic impracticability renders this proposed class action an inferior form of adjudication." In doing so, the court accepted defendant's argument that a class action would impose an undue economic burden on it by requiring a search of millions of noncomputerized rental agreements around the country for those with a New York connection, at an estimated cost of at least $30 million. It was asserted that this would more than overshadow the average claim of $31 for each member of a class whose size plaintiff estimated in the tens or hundreds of thousands.

General Business Law § 349 (h) affords a private right of action and treble damages for deception practiced against a consumer. Since such a statutory remedy does exist, potential class members must be given an opportunity to opt out of the class to pursue their private claims. Thus, identifying the members of the class becomes a necessity. According to Special Term, $30 million would be an unduly burdensome amount to expect defendant to expend, simply to reach the threshold determination of who should receive notice of this action.

On this record there is plainly inadequate substantiation for defendant's assertion that defining the class would cost $30 million. It is inconceivable that a nationwide company such as defendant would not be able to obtain the necessary data from its offices around the country or from its central processing center in Oklahoma City without the expenditure of millions of dollars. The bald assertion that defendant does not have a system in place to provide the data is especially surprising in light of the May 1983 decision of the California Court of Appeal in *Lazar v Hertz Corp.* (143 Cal App 3d 128, 191 Cal Rptr 849), in which virtually the same challenges were made in a class action suit against this defendant. The California court ruled that the benefits to the courts and the public in aggregating monetarily insignificant claims (estimated at an

average $6) into a single, time-saving lawsuit outweighed any legal, administrative or economic burden on defendant in defining the class.

As the California court noted, the burden of searching out putative class members upon whom notice must be served is unpersuasive. In rejecting Hertz' economic burden argument it was concluded that the small recovery should not preclude class certification, despite the claim that the potential class might amount to five million individuals.

In accepting defendant's estimate of the $31 average claim, Special Term did not give adequate weight to the very point that impelled a class action here, namely, the unlikelihood of small claims being filed for what, cumulatively, might amount to overcharges in the millions of dollars, as alleged. The public benefit of the class action remedy has been described as "a means of inducing socially and ethically responsible behavior on the part of large and wealthy institutions which will be deterred from carrying out policies or engaging in activities harmful to large numbers of individuals", people who "frequently are damaged in a small sum (often less than $100) since, realistically speaking, our legal system inhibits the bringing of suits based upon small claims" *(Friar v Vanguard Holding Corp.,* 78 AD2d 83, 94). Plainly, individual actions are not preferable to or the equivalent of class actions in such a context.

Indeed, the amount of the average claim for each member of the class is without real legal significance. Thus, for example, in *Sternberg v Citicorp Credit Servs.* (69 AD2d 352, *affd* 50 NY2d 856), an average claim as low as 50 cents did not negate a class action. As a practical matter, a class action is not only a superior method of adjudication, but the *only* method available for determining the issues raised, for "the damages that may have been sustained by any single [customer] will almost certainly be insufficient to justify the expenses inherent in any individual action, and the number of individuals involved is too large, and the possibility of effective communication between them too remote, to make practicable the traditional joinder of action." *(King v Club Med,* 76 AD2d 123, 128.)

In attacking the superiority of the class action vehicle, defendant points to a further difficulty presented by the fact that many potential members of the class are not New York residents, but were only nonresident customers returning Hertz automobiles to defendant's agencies in this State. As-

suming the availability of defendant's centralized computer data center, and a central headquarters in New York State to which all records are forwarded from defendant's branches around the State, there is no basis for denying class action status on this ground. Defendant estimates that of the 30 million rental agreements nationwide during the period in question, 2.8 million rentals were negotiated in New York, amounting to 9⅓% of its nationwide volume of business. Although no estimates are given as to the number of nonresidents included in that figure, to whom an "opt-out" procedure would be made available, we can reasonably assume that a substantial portion of those customers were New York residents (cf. *Phillips Petroleum Co. v Shutts*, 472 US —, 105 S Ct 2965). At this juncture, prior to discovery on the identity of the class, it is unnecessary to determine the procedure for obtaining jurisdiction over nonresidents (*Stellema v Vantage Press*, 109 AD2d 423, 427). Moreover, the constitutional issue has now been laid to rest (*Phillips Petroleum Co. v Shutts, supra*). At the very least, Special Term should have granted certification with respect to the obviously substantial number of New York residents in the class (*Brandon v Chefetz*, 106 AD2d 162, 171).

It is readily apparent that there is a prospective class of several hundred thousand, plainly meeting the numerosity requirement. To the extent that there may be variations among the members of the class because not all sustained the same type of alleged overcharge, the authorities are clear that the Trial Judge may, in appropriate circumstances, carve out subclasses without destroying the action as a class action (*Friar v Vanguard Holding Corp., supra*).

This rationale fits rather nicely into the predominance requirement that "questions of law or fact common to the class * * * predominate over any questions affecting only individual members" (CPLR 901 [a] [2]). The statute clearly envisions authorization of class actions even where there are subsidiary questions of law or fact not common to the class (*King v Club Med, supra*). It is undisputed that the various charges complained of were imposed by defendant. That individuals who are members of the class might have been subjected to less than all of the conduct complained of is not a ground for denying class action. Whatever differences there are do not override the common questions of law and fact. As noted, subclasses may be created to deal with the differences, if needed. The emphasis by defendant on the alleged rule that

because fraud claims are made, questions of individual reliance defeat a determination of class certification, has been answered otherwise by this court *(Brandon v Chefetz, supra; Stellema v Vantage Press, supra).* As those cases and others suggest, once it has been determined that the representations alleged are material and actionable, thus warranting certification, the issue of reliance may be presumed, subject to such proof as is required on the trial. Moreover, this court's unanimous rejection of defendant's dismissal motion (105 AD2d 1169) constitutes a determination that actionable claims have been alleged. Thus, the question of the extent to which reliance and unconscionability need be demonstrated by each class member is to be determined under well-accepted standards by the Trial Justice.

Defendant's assertion that plaintiff Weinberg's course of conduct is not typical of the class that he purports to represent because (1) he does not have an individual contract claim, (2) he cannot show on an individual basis "reliance" as to General Business Law § 349 claims and resulting injury, and (3) as a "sophisticated attorney" he could not show a lack of meaningful choice,[2] is no basis for denying class action status, even if true. The predominance of questions of fact or law over questions affecting only individual members is the test which must be met, not a nice inspection of the claims of each class member *(Friar v Vanguard Holding Corp.,* 78 AD2d 83, 98, *supra).*

Finally, it is notable that in determining whether a class action is superior to other viable methods, it is clear that most of the individuals having claims averaging less than $31 would have no realistic day in court if a class action were not available *(see, Phillips Petroleum Co. v Shutts, supra* [where the average claims were $100 per plaintiff]; *Sternberg v Citicorp Credit Servs., supra* [involving 50 cent claims]). The nature of the notice is a matter for the Trial Judge. A decision granting class action can be altered or modified, or the class decertified, if required by subsequent events (CPLR 907; *Friar v Vanguard Holding Corp.,* 78 AD2d, at p 100), and subclasses may be created (CPLR 906 [2]).

Accordingly, the order of Supreme Court, New York County (Louis Grossman, J.), entered April 15, 1985, denying class action certification as an inferior form of adjudication due to

---

2. The plaintiff in *Lazar v Hertz Corp.* (143 Cal App 3d 128, 191 Cal Rptr 849) was also an attorney.

economic impracticality, should be reversed, on the law, the facts, and in the exercise of discretion, and the motion for class action certification should be granted, with costs.

KUPFERMAN, J. P., SULLIVAN, KASSAL and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on April 15, 1985, unanimously reversed, on the law, the facts, and in the exercise of discretion, and the motion for class action certification granted. Appellant shall recover of respondent $50 costs and disbursements of this appeal.