[871 NYS2d 263]

GLOBE SURGICAL SUPPLY, as Assignee of REMY GALLANT, Appellant, v GEICO INSURANCE COMPANY, Respondent.

Second Department, December 30, 2008

## APPEARANCES OF COUNSEL

*Locks Law Firm, PLLC*, New York City (*Seth R. Lesser* and *Andrew P. Bell* of counsel), and *Manoussos & Associates*, Garden City, for appellant (one brief filed).

*O'Melveny & Myers, LLP*, New York City (*Ralph P. DeSanto, Paul R. Koepff* and *Benjamin B. Bianco* of counsel), for respondent.

## OPINION OF THE COURT

DICKERSON, J.

These appeals require us to address whether it is appropriate to certify a class action challenging the validity, under regulations in effect prior to October 6, 2004, of a no-fault insurer's use of the prevailing geographic rate or the reasonable and customary rate for health care services in calculating first-party benefits due to a claimant or health-care provider.

In 2004 the plaintiff, Globe Surgical Supply (hereinafter Globe), as assignee of Remy Gallant, commenced the instant class action alleging, inter alia, that the defendant, GEICO Insurance Company (hereinafter GEICO), violated the regulations promulgated by the New York State Insurance Department (hereinafter the Insurance Department) pursuant to the no-fault provisions of the Insurance Law, by systematically reducing its reimbursement for medical equipment and supplies, specifically, durable medical equipment (hereinafter DME), based on what it deemed to be "the prevailing rate in the geographic location of the provider," or "the reasonable and customary rate for the item billed." Specifically, Globe alleges that GEICO wrongfully adjusted or reduced reimbursement payments of claims for DME subject to former part E (11

NYCRR Appendix 17-C) (hereinafter former Part E) of the 23rd Amendment to Insurance Department Regulation 83 (11 NYCRR part 68), to an amount less than the amount charged in the proof of claim.

No-Fault Statutory and Regulatory Scheme

The Comprehensive Motor Vehicle Reparations Act (Insurance Law §§ 5101-5109 [hereinafter the No-Fault Law]) provides for the payment of first-party benefits to persons injured in automobile accidents involving New York State residents and/or vehicles registered in the state (*see* Insurance Law § 5103 [a]). "First party benefits" are defined as "payments to reimburse a person for basic economic loss" (Insurance Law § 5102 [b]). "Basic economic loss" includes "all necessary expenses incurred for . . . medical, hospital . . . and prosthetic services," such as DME (Insurance Law § 5102 [a] [1]). "Payments hereunder for necessary medical expenses shall be subject to the limitations and requirements of section 5108 of the New York Insurance Law" (11 NYCRR 65-1.1 [d]). Insurance Law § 5108 authorizes the Superintendent of Insurance (hereinafter the Superintendent) to establish a fee schedule for DME, which had been, at all times relevant to this appeal, set forth in former Part E. Former Part E regulated and set the amount of reimbursement to providers of DME as follows: "[f]or medical equipment and supplies (*e.g.*, TENS units, soft cervical collars) provided by a physician or medical equipment supplier, the maximum permissible charge is 150 percent of the documented cost of the equipment to the provider."[1]

Regulation 68

The Superintendent also promulgated Regulation 68, codified at 11 NYCRR part 65, to provide the specific procedural details for the payment of benefits. Under Regulation 68, the injured party is required to notify the insurer and to submit a written proof of claim for medical treatment no later than 45 days after services are rendered. Typically, as is the case here, the insured party orders DME from the supplier (e.g. Globe) and the supplier is assigned the right to claim reimbursement. Upon receipt of proof of claim, an insurer has 15 business days within which

---

1. Regulation 83 was amended, effective October 6, 2004, and now states that where there is no specific schedule for reimbursement, the insurer must pay the "lesser of: (1) the acquisition cost . . . to the provider plus 50 percent; or (2) the usual and customary price charged to the general public" (11 NYCRR Appendix 17-C, part F [a]). All the parties agree that the former Part E governs in this case.

to request "any additional verification required by the insurer to establish proof of claim" (11 NYCRR 65-3.5 [b]). An insurance company must pay or deny the claim within 30 calendar days after receipt of the proof of claim (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). "In the event any person making a claim for first-party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration" (11 NYCRR 65-1.1 [d]).

The Litigation

In a complaint dated July 19, 2004, Globe alleged that GEICO

> "[a]t some point in time . . . ceased paying claims in accordance with the terms of the [no-fault] regulations and . . . instituted a systematic pattern and practice of reviewing claims for reimbursement against what it deemed to be the 'prevailing rate in the geographic location of the provider,' 'the reasonable and customary rate for [the] item billed,' or similar rationales . . . There is nothing in [former] Part E which permits an insurer to reduce reimbursements for [DME] by such factors as reasonable and customary charges or geographically prevailing rates. Yet, that is precisely what defendant GEICO is doing and has been doing."

Specifically, Globe alleged that its assignor, Remy Gallant, was injured in an accident on February 10, 2001, with a GEICO policyholder. According to the complaint, Gallant purchased a transcutaneous electrical nerve stimulator (hereinafter the TENS unit) from Globe, which cost $340. Globe submitted the claim to GEICO, as assignee of Gallant, in the amount of $510 (representing 150% of the actual cost). On May 23, 2001, GEICO denied the claim for that amount and only reimbursed Globe in the amount of $200. As noted on Gallant's claim form, GEICO partially denied the claim because the cost submitted was "far in excess of the industry average which is $107.82 . . . Based on this, a reasonable reimbursement is 150% over this amount which is $161.73. However, in consideration of the potential range, $200.00 will be reimbursed."

Globe sought injunctive relief and asserted four causes of action sounding in (1) violation of the No-Fault Law, (2) breach of contract, (3) violation of General Business Law § 349, and (4) unjust enrichment. The Supreme Court granted that branch of GEICO's motion which was to dismiss the first cause of action

for failure to state a cause of action, and those branches of GEICO's motion which were to dismiss the third and fourth causes of action for lack of standing. In denying that branch of GEICO's motion which was to dismiss the second cause of action alleging breach of contract, the Supreme Court noted that the

> "plaintiff's claim is based upon Insurance Department Regulations, which are part of the policy as a matter of law (*see* Insurance Law § 5103 [h]) and which are specifically set forth in plaintiff's complaint . . . Insurance policies covering other members of the proposed class need not be identified at this stage of the action."

Globe purportedly commenced this action on behalf of itself and all members of a class "consisting of all persons who had reimbursement payments of claims for medical equipment and supplies subject to [former] Part E of the Twenty-Third Amendment to Regulation No. 83 (11 NYCRR 68) ('Part E Reimbursements') adjusted or reduced by Geico."

GEICO answered the complaint and set forth numerous affirmative defenses and counterclaims alleging fraud and unjust enrichment against Globe and the class. In particular, GEICO asserted that Globe and other prospective class members committed fraud by

> "engag[ing] in a scheme to exploit the payment formula . . . in order to collect fraudulent charges for [DME] purportedly provided to individuals who were injured in automobile accidents . . . Among other things, Globe . . . charged grossly inflated prices for the supplies it purportedly sold . . . and submitted false 'documentation' of its costs . . . GEICO [seeks] to recover the money that Globe . . . has stolen from the GEICO Companies (and if this case is certified as a class action, that other members of the purported class have stolen) by submitting thousands of fraudulent charges for DME."

Prior to the submission of the motion at issue on this appeal, the parties conducted discovery, which included the depositions of Globe's principal, Jean M. Francois, and a supervisor at GEICO, Valerie Coffey. Francois testified that he owned Globe, which dispenses DME to patients. Francois acknowledged that P.Z.F. Management Company, Inc., was the actual name of the company doing business as Globe. During his deposition, Francois invoked the Fifth Amendment to the United States Consti-

tution when asked questions about shareholders' meetings, tax preparation, his arrest for insurance fraud,[2] and his knowledge of other supply companies. Francois stated that, during the normal course of business, he paid for DME by check. Repeatedly throughout his deposition, Francois was shown documents that had the same invoice number and dates but represented the purchase of two different items of DME. Francois was also shown documents from Allstate Insurance Company representing the same invoice numbers submitted for various DME items. Francois had no explanation as to why he submitted the same invoice number numerous times to GEICO, representing the purchase of different items of DME. When asked to explain why the same invoice for the purchase of one lumbosacral support custom fabric was submitted 15 times to both GEICO and Allstate, Francois responded: "since that's what I pay for it and I stick with that one invoice and send it out . . . it wasn't required or specifically by any insurance company to ask me to send that specific invoice that matches the claim."

Valerie Coffey averred that she was the personal injury protection manager and supervisor at GEICO's Woodbury office, which processed no-fault claims during the relevant time period. Coffey testified that state guidelines required receipt of proof of claim. She acknowledged that, once received, GEICO had 30 days to deny or pay the bill. Coffey testified that it was her understanding that the 150% reimbursement for DME supplies should be based on reasonable cost, which she defined as a "bona fide arm's length transaction." Coffey stated that in cases where GEICO saw inflated pricing for DME supplies, it performed a survey of multiple vendors and wholesalers and provided reimbursement based on the amount determined by the market survey, rather than 150% of the amount set forth on the submitted invoice. The first survey applied to the TENS unit and the second survey covered cervical collars, pillows, back massagers, lumbosacral support, and thermophore. Coffey

---

2. In his affidavit sworn to April 21, 2006, Christopher J. Jones, a "Detective with the NYPD's Fraudulent Accident Investigation Squad . . . for the past 2½ years," stated that "[f]raud by DME suppliers against no-fault insurance companies is widespread. It has been a principal focus of our Squad's investigation . . . On or about June 1, 2005, Mr. Francois was arrested as the result of an undercover investigation in which I was involved. He was arrested for offering to pay an undercover agent to stage a phony automobile accident and refer the alleged 'victims' to a medical clinic. The specific charges were insurance fraud in the third degree and conspiracy in the fifth degree . . . Subsequently, Mr. Francois entered into a plea agreement, pleading guilty to disorderly conduct."

explained that, based on the survey, the average price for a TENS unit was in the $160 range. Coffey stated that, to be on the "fair side," GEICO decided to reimburse them at the rate of $200 per unit, but that GEICO did not reimburse up to 150% of the amount set forth on the invoice.

Coffey stated that there were more than 10 DME suppliers who submitted claims to GEICO for reimbursement. When asked if the suppliers who submitted claims for reimbursement numbered more than 100, Coffey responded "once you get to a hundred, I'd be speculating."

On March 3, 2006, Globe moved, inter alia, pursuant to CPLR 901 and 902 for class certification on behalf of a class of all persons who had reimbursement payments of claims for medical equipment and supplies subject to former Part E adjusted or reduced by GEICO to an amount less than the amount charged in the proof of claim,[3] specifically to a "reasonable reimbursement of 150%" of either the "industry average" or "of the average retail price." GEICO opposed the motion. The Supreme Court denied the motion and, upon granting that branch of Globe's subsequent motion which was for leave to reargue, adhered to the original determination.

Class Certification: Burden of Proof and Liberal Construction

Article 9 of the CPLR is to be "liberally construed" (*Beller v William Penn Life Ins. Co. of N.Y.*, 37 AD3d 747, 748 [2007]; *Wilder v May Dept. Stores Co.*, 23 AD3d 646, 649 [2005]; *Jacobs v Macy's E., Inc.*, 17 AD3d 318, 319 [2005]; *Kidd v Delta Funding Corp.*, 289 AD2d 203 [2001]; *Friar v Vanguard Holding Corp.*, 78 AD2d 83, 91 [1980]; *see generally* 3 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 901.04, 901.05, 901.20 [2d ed]) in favor of the granting of class certification if all of the prerequisites of CPLR 901 (a) (1)-(5) (*see Matter of Colt Indus. Shareholder Litig.*, 77 NY2d 185, 194 [1991]; *Klein v Robert's Am. Gourmet Food, Inc.*, 28 AD3d 63, 69 [2006]; *Ackerman v Price Waterhouse*, 252 AD2d 179, 191 [1998]; *Friar v Vanguard Holding Corp.*, 78 AD2d at 90-91) and CPLR 902 (1)-(5) (*see Ackerman v Price Waterhouse*, 252 AD2d at 191) are met.

The prerequisites articulated in CPLR 901 (a) include proof that the proposed class is so numerous that joinder of all members is impracticable, that common questions of law and

---

**3.** For other examples of insurer "repricing" of medical bills, see *Reyher v State Farm Mut. Auto. Ins. Co.* (171 P3d 1263 [Colo Ct App 2007]) and *LaBerenz v American Family Mut. Ins. Co.* (181 P3d 328 [Colo Ct App 2007], *cert denied* 2008 WL 1701094, 2008 Colo LEXIS 414 [Sup Ct 2008]).

fact applicable to the class predominate over questions affecting only individual members, that claims or defenses of the representative parties are typical of the claims or defenses of the class, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The proposed class action must also meet the prerequisites of CPLR 902 (1)-(5). The relevant factors articulated in CPLR 902 (1) ("[t]he interest of members of the class in individually controlling the prosecution or defense of separate actions"), CPLR 902 (2) ("[t]he impracticability or inefficiency of prosecuting or defending separate actions") and CPLR 902 (3) ("[t]he extent and nature of any litigation concerning the controversy already commenced by or against members of the class") may, under the circumstances of this case, be subsumed under the prerequisite of superiority (*see* CPLR 901 [a] [5]). CPLR 902 (4) requires consideration of "[t]he desirability or undesirability of concentrating the litigation of the claim in the particular forum." The selected forum is Nassau County, which is appropriate given the nature of the claims asserted (*see Galdamez v Biordi Constr. Corp.*, 13 Misc 3d 1224[A], 2006 NY Slip Op 51969[U], *5 [2006], *affd* 50 AD3d 357 [2008] ["'(T)he forum is appropriate, as the Public Works Projects were located in New York"]; *Mazzocki v State Farm Fire & Cas. Co.*, 170 Misc 2d 70, 72 [1996] ["under the New York venue statute a class action is properly venued if at least one member of the class resides in the county where the action was brought"]) and the absence of a forum selection clause (*see Boss v American Express Fin. Advisors, Inc.*, 6 NY3d 242, 247 [2006] ["Forum selection clauses are enforced because they provide certainty and predictability in the resolution of disputes"]; *Rocco v Pension Plan of N.Y. State Teamsters Conference Pension & Retirement Fund*, 5 Misc 3d 1027[A], 2004 NY Slip Op 51580[U], *2 [2004] [motion to transfer purported class action from Kings County to Onondaga County as a more convenient forum granted as "the rules of the Pension Fund mandate that any action brought against it be commenced in the County of Onondaga"]). Finally, CPLR 902 (5) requires consideration of "[t]he difficulties likely to be encountered in the management of a class action." The determination to grant class action certification rests in the sound discretion of the trial court (*see Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52-53 [1999]; *Tosner v Town of Hempstead*, 12 AD3d 589, 590 [2004]; *Liechtung v Tower Air*, 269 AD2d 363, 364 [2000]). The primary issue on a motion for class certifica-

tion is whether the claims as set forth in the complaint can be efficiently and economically managed by the court on a class-wide basis. The class representative has the burden of establishing the prerequisites of certification (*see Kings Choice Neckwear, Inc. v DHL Airways, Inc.*, 41 AD3d 117 [2007]; *Beller v William Penn Life Ins. Co. of N.Y.*, 37 AD3d 747, 748 [2007]; *Rabouin v Metropolitan Life Ins. Co.*, 25 AD3d 349, 350 [2006]; *Rallis v City of New York*, 3 AD3d 525, 526 [2004]; *Liechtung v Tower Air*, 269 AD2d at 364; *Ackerman v Price Waterhouse*, 252 AD2d 179 [1998]; *Canavan v Chase Manhattan Bank*, 234 AD2d 493, 494 [1996]).

## Class Definition

On a motion for class certification, the court must be convinced that the proposed class is capable of being identified (*see Colbert v Rank Am.*, 1 AD3d 393, 394-395 [2003]; *Lichtman v Mount Judah Cemetery*, 269 AD2d 319, 320-321 [2000]; *Mitchell v Barrios-Paoli*, 253 AD2d 281, 291 [1999]; *Canavan v Chase Manhattan Bank*, 234 AD2d at 494). Here, the class has been clearly defined as

> "all persons who had reimbursement payments of claims for medical equipment and supplies subject to [former] Part E of the Twenty-Third Amendment to Regulation No. 83 (11 NYCRR 68) . . . adjusted or reduced by Geico based upon an 'industry average' to a 'reasonable reimbursement of 150%' of the 'industry average' or 'of the average retail price,' to an amount less than the amount charged in the proof of claim."

## Numerosity

CPLR 901 (a) provides that a class action may be maintained if, inter alia, "1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable." GEICO did not challenge numerosity in its opposition to Globe's original motion, but instead first raised the issue in its opposition to Globe's motion for leave to reargue. As such, GEICO has waived any challenge to numerosity (*cf. Friar v Vanguard Holding Corp.*, 78 AD2d at 96).

Nonetheless, the minimum number permissible may depend on a variety of factors. "There is no 'mechanical test' to determine whether . . . numerosity . . . has been met, nor is there a set rule for the number of prospective class members which must exist before a class is certified" (*id.* at 96 [citations

omitted]). "Each case depends upon the particular circumstances surrounding the proposed class and the court should consider the reasonable inferences and commonsense assumptions from the facts before it" (*id.* [citations omitted]). In any event, the proposed class herein is, at a minimum, between 10 and 100 DME providers and, hence, the numerosity requirement is met (*see Klakis v Nationwide Leisure Corp.*, 73 AD2d 521, 522 [1979] [class certification properly denied where putative class consisted of only 21 individuals]; *Caesar v Chemical Bank*, 118 Misc 2d 118, 119 [1983], *affd* 106 AD2d 353 [1984], *mod* 66 NY2d 698 [certified class of 39 bank employees]; *Pajaczek v CEMA Constr. Corp.*, 18 Misc 3d 1140[A], 2008 NY Slip Op 50386[U], *3 [2008] ["Here, the numerosity requirement has been satisfied with forty class members. The class, as defined, is narrowly defined to avoid being over inclusive, but large enough that joinder is not practicable"]; *Galdamez v Biordi Constr. Corp.*, 13 Misc 3d 1224[A], 2006 NY Slip Op 51969[U], *2 [2006], quoting *Dornberger v Metropolitan Life Ins. Co.*, 182 FRD 72, 77 [1998] ["It has, however, been held that 'the threshold for impracticability of joinder seems to be around forty' "]; *see also Philadelphia Elec. Co. v Anaconda Am. Brass Co.*, 43 FRD 452 [1968] [class of 25 members certified]; *Bernstein v American Family Ins. Co.*, 2005 WL 1613776, *2 [Ill Cir Ct 2005] ["If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity is probably lacking, if the class has between twenty-five and forty, there is no automatic rule and other factors . . . become relevant"]).

Common Questions of Law or Fact

CPLR 901 (a) (2) provides that there must be "questions of law or fact common to the class which predominate over any questions affecting only individual members." Since the enactment of CPLR article 9 in 1975, there has been some reluctance on the part of New York courts to certify some types of class actions, e.g., (1) physical injury and property damage mass tort class actions (*see Catalano v Heraeus Kulzer, Inc.*, 305 AD2d 356 [2003]; *Lieberman v 293 Mediterranean Mkt. Corp.*, 303 AD2d 560 [2003]; *Aprea v Hazeltine Corp.*, 247 AD2d 564 [1998]; *cf. Osarczuk v Associated Univs., Inc.*, 36 AD3d 872 [2007]; *Fleming v Barnwell Nursing Home & Health Facilities*, 309 AD2d 1132 [2003]; *Godwin Realty Assoc. v CATV Enters.*, 275 AD2d 269 [2000]; *Matter of Arroyo v State of New York*, 12 Misc 3d 1197[A], 2006 NY Slip Op 51606[U] [2006]; *Cunningham v*

*American Home Prods. Corp.*, NYLJ, Sept. 21, 1999, at 26, col 5), (2) class actions challenging governmental operations (*see Mahoney v Pataki*, 98 NY2d 45 [2002]; *Jamie B. v Hernandez*, 274 AD2d 335 [2000]; *Davis v Croft*, 237 AD2d 163 [1997]; *cf. New York City Coalition to End Lead Poisoning v Giuliani*, 245 AD2d 49 [1997]; *Chalfin v Sabol*, 247 AD2d 309 [1998]; *Yusuf v City of New York*, 309 AD2d 721 [2003]; *Matter of Holcomb v O'Rourke*, 255 AD2d 383 [1998]; *Watts v Wing*, 308 AD2d 391 [2003]), and (3) class actions seeking a penalty or minimum recovery, which are prohibited by CPLR 901 (b), including class actions commenced under General Business Law § 340 (the Donnelly Antitrust Act) (*see Sperry v Crompton Corp.*, 8 NY3d 204 [2007]) and the Federal Telephone Consumer Protection Act of 1991 (47 USC § 227) (*see e.g. J. A. Weitzman, Inc. v Lerner, Cumbo & Assoc., Inc.*, 46 AD3d 755 [2007]; *Giovanniello v Carolina Wholesale Off. Mach. Co., Inc.*, 29 AD3d 737 [2006]; *Rudgayzer & Gratt v Cape Canaveral Tour & Travel, Inc.*, 22 AD3d 148 [2005]). As to the third category of actions, however, if only actual damages are sought, a court may certify a class in actions asserting a violation of General Business Law § 349 (*see e.g., Cox v Microsoft Corp.*, 8 AD3d 39, 40 [2004]; *Ridge Meadows Homeowners' Assn. v Tara Dev. Co.*, 242 AD2d 947 [1997]; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604, 606 [1987]; *Lawlor v Cablevision Sys. Corp.*, 15 Misc 3d 1111[A], 2007 NY Slip Op 50580[U] [2007]) and the Federal Telephone Consumer Protection Act of 1991 (*see e.g. J. A. Weitzman, Inc. v Lerner, Cumbo & Assoc., Inc.*, 46 AD3d 755, 756 [2007]). Nonetheless, the courts have uniformly certified breach of contract class actions, notwithstanding differing individual damages (*see* discussion below on damages within the context of the requirements of CPLR 901 [a] [2]), where, as here, there is uniformity in contractual agreements and/or statutorily imposed obligations (*see Beller v William Penn Life Ins. Co. of N.Y.*, 37 AD3d 747, 748 [2007]; *Wilder v May Dept. Stores Co.*, 23 AD3d 646, 649 [2005]; *Jacobs v Macy's E., Inc.*, 17 AD3d 318, 320 [2005]; *Cherry v Resource Am., Inc.*, 15 AD3d 1013 [2005]; *Freeman v Great Lakes Energy Partners, L.L.C.*, 12 AD3d 1170, 1171 [2004]; *Englade v HarperCollins Publs.*, 289 AD2d 159, 160 [2001]; *Broder v MBNA Corp.*, 281 AD2d 369, 371 [2001]; *Colbert v Rank Am.*, 295 AD2d 302 [2002]; *Makastchian v Oxford Health Plans*, 270 AD2d 25, 26 [2000]; *Liechtung v Tower Air*, 269 AD2d at 364; *Taylor v American Bankers Ins. Group*, 267 AD2d 178 [1999]; *Hoerger v Board of Educ. of Great Neck Union*

*Free School Dist.*, 98 AD2d 274, 283 [1983]; *Gross v Ticketmaster*, 5 Misc 3d 1005[A], 2004 NY Slip Op 51199[U] [2004]; *Amalfitano v Sprint Corp.*, 4 Misc 3d 1027[A], 2004 NY Slip Op 51076[U] [2004]; *Gilman v Merrill Lynch, Pierce, Fenner & Smith*, 93 Misc 2d 941, 944 [1978]; *Guadagno v Diamond Tours & Travel*, 89 Misc 2d 697, 699 [1976]; *Feldman v Quick Quality Rests., Inc.*, NYLJ, July 22, 1983, at 12, col 5).

Predominance of Common Questions

This Court held, in *Friar v Vanguard Holding Corp.* (78 AD2d at 97), that the determination of whether there is a common predominating issue of fact or law should be based on "whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated" (internal quotation marks omitted).

GEICO contends that the following individual issues predominate over any common questions of law or fact: (1) whether GEICO had individual defenses to the various claims of putative class members, based on the timeliness of its coverage determinations or lack of coverage in the first instance, (2) whether the DME claims arose from a fraudulent accident, (3) whether the DME class member can prove its "documented costs," and (4) individual damages.

The Supreme Court found that "the timeliness of GEICO's denial of all or part of a class member's claim must be considered in order to determine whether defenses other than lack of coverage can be raised." (12 Misc 3d 1185[A], 2006 NY Slip Op 51446[U], *2 [2006].) However, Globe contends that GEICO is precluded from raising any affirmative defenses because it failed to do so within the statutory time period. Also, Globe argues that GEICO waived any lack of coverage claim because GEICO never raised the claim in its answer or counterclaims, and, in any event, the claim is based on unsupported conclusions and speculations. GEICO counters that all defenses relating to lack of coverage are not subject to the waiver rule.

Recently, the Court of Appeals reviewed the fundamental principles embodied in the No-Fault Law (*see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312 [2007]). In that case, the Court addressed whether the plaintiff's failure to offer a validly-executed assignment equated to a "lack of coverage" defense which is not subject to the "30-day rule" (*id.* at 317).

The Court stated:

> "[A] carrier that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim. This Court has recognized a narrow exception to this preclusion remedy for situations where an insurance company raises a defense for lack of coverage. In such cases, an insurer who fails to issue a timely disclaimer is not prohibited from later raising the defense because the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed" (*id.* at 318 [citations and internal quotation marks omitted]; *see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274 [1997]; *Central Gen. Hosp. v Chubb Group of Ins. Cos.*, 90 NY2d 195 [1997]).

The majority in *Hospital for Joint Diseases* rejected the insurer's argument that any deficiency of the assignment implicated a lack of coverage defense warranting exemption from the preclusion rule. The Court reiterated that the "tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices" (*Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 320).

Similarly, this Court, in *Fair Price Med. Supply Corp. v Travelers Indem. Co.* (42 AD3d 277 [2007], *affd* 10 NY3d 556 [2008]), addressed the preclusion rule and the lack of coverage exception. In *Fair Price,* the insurer failed to comply with the 30-day rule and attempted to equate a "failure to furnish services" (*id.* at 284) defense with the lack of coverage defense. This Court found that the defense was precluded because "[t]he defendant's allegation, i.e., that the plaintiff billed for supplies it never furnished, is more akin to a claim of overbilling (albeit an extreme form thereof)" (*id.* at 283). The Court stated that while the insurer "was entitled to contest the plaintiff's claim as fraudulent, it was required to do so within the rules of the no-fault system" (*id.* at 286).

Thus, contrary to GEICO's contention, it follows that, in the instant case, GEICO would not be able to present a defense based on fraudulent billing or the inability of the class members

to establish "documented costs." In the proposed class action it is clear that the factor common to all potential class members is that the DME claims were denied because GEICO found them to be in excess of the industry average. As this Court and the Court of Appeals have made clear, overbilling and invoice recycling do not give rise to a lack of coverage defense. GEICO's failure to claim the fraud defenses within the required 30-day period thus precludes it from raising it in the class action (*see e.g. Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d 312 [2007]).

Globe correctly contends that the potential for different individual damages claims is not a valid reason for denying class action status, because damages are easily calculated based on the information contained in the denial-of-claim forms. GEICO argues that the calculation of damages is not subject to a simple formula, and that the trier of fact will have to determine if each claim is excessive or if it meets 150% of documented costs. Contrary to GEICO's assertions, the calculation of individual damages within a breach of contract class action is not dispositive of the issue of class certification, and is clearly manageable in the instant controversy (*see Englade v HarperCollins Publs.*, 289 AD2d 159, 160 [2001] ["That individual authors may have different levels of damages does not defeat class certification"]; *Broder v MBNA Corp.*, 281 AD2d 369, 371 [2001] ["particular damages of each individual class member can be easily computed"]; *Godwin Realty Assoc. v CATV Enters.*, 275 AD2d 269, 270 [2000] ["To the extent that there may be differences among the class members as to the degree in which they were damaged, the court may try the class aspects first and have the individual damage claims heard by a Special Master"]; *see also Weinberg v Hertz Corp.*, 116 AD2d 1, 6-7 [1986], *affd* 69 NY2d 979 [1987]; *Lamarca v Great Atl. & Pac. Tea Co., Inc.*, 16 Misc 3d 1115[A], 2007 NY Slip Op 51424[U], *3 [2007], *affd* 55 AD3d 487 [2008]; *Matter of Arroyo v State of New York*, 12 Misc 3d 1197[A], 2006 NY Slip Op 51606[U], *4 [2006]; *Cox v Microsoft Corp.*, 10 Misc 3d 1055[A], 2005 NY Slip Op 51968[U], *5 [2005]; *Matter of Coordinated Tit. Ins. Cases*, 2 Misc 3d 1007[A], 2004 NY Slip Op 50171[U] [2004]; *Gilman v Merrill Lynch, Pierce, Fenner & Smith*, 93 Misc 2d 941, 944 [1978]; *Guadagno v Diamond Tours & Travel*, 89 Misc 2d 697, 699 [1976]).

Establishing an Individual Class Member's Prima Facie Case

Upon reargument, the Supreme Court, although adhering to its initial determination, nonetheless did so despite rejecting its

initial conclusion that each DME transaction must be examined separately to determine whether each individual class member has a prima facie case. Rather, the court found that each potential class member would not have to set forth a prima facie case proving facts, such as "documented costs," or providing invoices or cancelled checks, but that class certification was still not warranted even if such a standard were applied.

With respect to this issue, the Supreme Court properly found, upon reargument, that a prima facie case can be easily made out by the class members and that proof of documented costs is not a requirement (*see Mary Immaculate Hosp. v Allstate Ins. Co.*, 5 AD3d 742, 742-743 [2004] ["plaintiff hospitals made prima facie showing of their entitlement to judgment as a matter of law by submitting evidentiary proof that the prescribed statutory billing forms had been mailed and received, and that payment of no-fault benefits was overdue"]; *King's Med. Supply Inc. v Country-Wide Ins. Co.*, 5 Misc 3d 767, 770 [2004] ["to establish a prima facie case, a plaintiff medical supplier must submit proof that it timely transmitted its claim for no-fault benefits, that the defendant insurer received the claim but failed to pay or validly deny the claim within the permissible 30 days or to request verification"]). This is true, given that GEICO did not seek verification of the documented costs for the invoices submitted (*see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co.*, 9 NY3d at 320 ["(e)ven assuming that (assignment of benefits is a necessary component of the hospital's prima facie case) (the) form stating that the patient's signature is 'on file' satisfies that burden where the carrier does not timely take action to verify the existence of a valid assignment"]).

Typicality

CPLR 901 (a) (3) provides that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Typical claims are those that arise from the same facts and circumstances as the claims of the class members (*see Ackerman v Price Waterhouse*, 252 AD2d at 201 [claims "arose out of the same course of conduct and are based on the same theories as the other class members, they are plainly typical of the entire class"]; *Pruitt v Rockefeller Ctr. Props.*, 167 AD2d 14, 22 [1991]; *Friar v Vanguard Holding Corp.*, 78 AD2d at 99; *Galdamez v Biordi Constr. Corp.*, 13 Misc 3d 1224[A], 2006 NY Slip Op 51969[U] [2006]; *Cox v Microsoft Corp.*, 10 Misc 3d 1055[A], 2005 NY Slip Op 51968[U], *2 [2005]; *Fiala v Metropolitan Life Ins. Co.*, NYLJ, June 2, 2006, at 22, col 1, 2006 NY Slip Op

30068[U] [2006]). Typicality can overlap with the predominance of common questions of law or fact (*see* CPLR 901 [a] [2]) and the adequacy of representation (*see* CPLR 901 [a] [4]; *Matter of Coordinated Tit. Ins. Cases*, 2 Misc 3d 1007[A], 2004 NY Slip Op 50171[U], *12 [2004]; 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 901.24).

## Adequacy of Representation

The three essential factors to consider in determining adequacy of representation are potential conflicts of interest between the representative and the class members, personal characteristics of the proposed class representative (*e.g.* familiarity with the lawsuit and his or her financial resources), and the quality of the class counsel (*see generally Ackerman v Price Waterhouse*, 252 AD2d 179 [1998]; *Pruitt v Rockefeller Ctr. Props.*, 167 AD2d at 25-26; *Matter of Coordinated Tit. Ins. Cases*, 2 Misc 3d 1007[A], 2004 NY Slip Op 50171[U], *12 [2004]).

## Adequacy of Class Counsel

In order to be found adequate in representing the interests of the class, class counsel should have some experience in prosecuting class actions (*see Galdamez v Biordi Constr. Corp.*, 13 Misc 3d 1224[A], 2006 NY Slip Op 51969[U], *4 [2006]; *Matter of Arroyo v State of New York*, 12 Misc 3d 1197[A], 2006 NY Slip Op 51606[U], *6 [2006]; *Cox v Microsoft Corp.*, 10 Misc 3d 1055[A], 2005 NY Slip Op 51968[U], *3 [2005]; *Fiala v Metropolitan Life Ins. Co.*, NYLJ, June 2, 2006, at 22, col 1, 2006 NY Slip Op 30068[U] [2006]). There is no question that Globe's counsel is highly competent in prosecuting class actions.

## Adequacy of Class Representative

However, Francois, the owner of Globe, was properly rejected by the Supreme Court as an adequate representative for the class. Although Globe attempts to couch Francois's problems in terms of "amorphous and generalized suppositions," it is clear that Francois was charged with insurance fraud for attempting to stage accidents and thereafter bill insurance companies. While he may have only pleaded guilty to disorderly conduct, he displayed his attempt to put his interest above others by invoking his Fifth Amendment rights at his deposition, although he later withdrew his invocation of the Fifth Amendment in a subsequently-filed reply affidavit. Moreover, there was adequate evidence that Francois was engaged in recycling invoices. In addition, Francois and the class are subject to a class action

counterclaim which may or may not be meritorious.[4] In any event, Francois's attempt to defend himself against any such counterclaim by GEICO would preoccupy him and detract from his representation of the class.

Therefore, Globe failed to show that it is an adequate representative of the class. "Other [appellate courts] emphasize, as do we, the challenge presented by a defense unique to a class representative—the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class" (*Beck v Maximus, Inc.*, 457 F3d 291, 297 [2006]). In other words, a class should not be certified if Globe is the class representative, as "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it" (*Hanon v Dataproducts Corp.*, 976 F2d 497, 508 [1992] [citations omitted]; *see Koos v First Nat. Bank of Peoria*, 496 F2d 1162, 1165 [1974]; *Folding Cartons, Inc. v America Can Co.*, 79 FRD 698 [1978]; *Weisman v Darneille*, 78 FRD 669, 671 [1978]; *Di Pace v Linsco/ Private Ledger Corp.*, 2004 WL 1410046 [Cal Ct App 2004]; *Benzing v Farmers Ins. Exch.*, 179 P3d 103 [Colo Ct App 2007], *cert granted* 2008 WL 434677, 2008 Colo LEXIS 160 [2008]; *cf. Lamarca v Great Atl. & Pac. Tea Co., Inc.*, 16 Misc 3d 1115[A], 2007 NY Slip Op 51424[U] [2007]; *Galdamez v Biordi Constr. Corp.*, 13 Misc 3d 1224[A], 2006 NY Slip Op 51969[U] [2006]).

Superiority

CPLR 901 (a) (5) provides that a class may be certified only if "a class action is superior to other available methods for the

4. Counterclaims against the class representative and/or the members of the class may be asserted to discourage class participation and render the named class representatives inadequate by creating a seemingly unique defense. The courts must carefully examine the merits and purpose of class action counterclaims (*see Van Gemert v Boeing Co.*, 590 F2d 433 [1978], *affd* 444 US 472 [1980] [absent class members who are not parties are not subject to counterclaims under Federal Rules of Civil Procedure rule 13 since such counterclaims may be used to encourage class members to opt out of the class]; *Equity Residential Props. Trust v Yates*, 910 So 2d 401, 404 [Fla Ct App 2005] ["we find no error in the trial court's denial of the landlord's motion to bring a class-wide counterclaim"]; *Purcell & Wardrope Chartered v Hertz Corp.*, 175 Ill App 3d 1069, 530 NE2d 994 [1988] [dismissing counterclaim against class representative for lack of evidence]; *Shaver v Standard Oil Co.*, 89 Ohio App 3d 52, 623 NE2d 602 [1993] [assertion of counterclaim against named plaintiff does not destroy ability of representative to comply with typicality requirements; the counterclaim should be treated as a request for a setoff against the named plaintiff's individual claim]; *see also* 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 901.19 [2d ed]).

fair and efficient adjudication of the controversy." The No-Fault Law provides claimants with the option of commencing a plenary action or submitting the dispute to arbitration (*see* Insurance Law § 5106 [b]). In addition, the No-Fault Law provides that the claimant may recover penalty interest at a rate of 24% (*see* Insurance Law § 5106 [a]), a remedy not available in a class action. However, the availability of an arbitration alternative does not mean such a proceeding is superior to a class action which, through the aggregation of many similar claims, provides an incentive to the legal profession to expend the resources necessary to fully litigate often complex cases such as the instant matter, including the pursuit of this very appeal. The "very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" (*Amchem Products, Inc. v Windsor*, 521 US 591, 617 [1997]; *see Pruitt v Rockefeller Ctr. Props.*, 167 AD2d at 21; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604, 607-608 [1987]; *Yollin v Holland Am. Cruises*, 97 AD2d 720, 721 [1983]; *Friar v Vanguard Holding Corp.*, 78 AD2d at 98-99; *Matter of Arroyo v State of New York*, 12 Misc 3d 1197[A], 2006 NY Slip Op 51606[U], *6 [2006]; *see also Bell v Superior Ct.*, 69 Cal Rptr 3d 328, 349 [Ct App 2007]). In addition, should individual class members wish to pursue arbitration, and thereby recover statutory penalties unavailable in a class action, they may do so by opting out of the class sought to be certified (*see Cox v Microsoft Corp.*, 8 AD3d at 40; *Ridge Meadows Homeowners' Assn. v Tara Dev. Co.*, 242 AD2d 947, 947 [1997]; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d at 606).

Moreover, as with the requirements of CPLR 901 (a) (2), referable to the issues of liability and damages calculations, the prosecution of this proposed class action is fairly straightforward and quite manageable. Thus, although the motion to certify a class was properly denied because of Globe's inadequacy as a class representative, upon reargument, the denial of the motion should have been without prejudice to renewal.

Accordingly, the appeal from the order entered July 21, 2006, is dismissed, as that order was superseded by the order entered November 8, 2006, made upon reargument. The order entered November 8, 2006, is reversed insofar as appealed from, on the facts and in the exercise of discretion, upon reargument, so much of the order entered July 21, 2006, as denied that branch of the plaintiff's motion which was to certify a class action pur-

suant to CPLR article 9 is vacated, and that branch of the plaintiff's motion is denied without prejudice to renewal.

SPOLZINO, J.P., FLORIO and MILLER, JJ., concur.

Ordered that the appeal from the order entered July 21, 2006, is dismissed, as that order was superseded by the order entered November 8, 2006, made upon reargument; and it is further,

Ordered that the order entered November 8, 2006, is reversed insofar as appealed from, on the facts and in the exercise of discretion, upon reargument, so much of the order entered July 21, 2006, as denied that branch of the plaintiff's motion which was to certify a class action pursuant to CPLR article 9 is vacated, and that branch of the plaintiff's motion is denied without prejudice to renewal; and it is further,

Ordered that one bill of costs is awarded to the appellant.