Jenack v Goshen Operations, LLC (2023 NY Slip Op 05495)

Jenack v Goshen Operations, LLC

2023 NY Slip Op 05495

Decided on November 1, 2023

Appellate Division, Second Department

Ford, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 1, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
WILLIAM G. FORD
LILLIAN WAN, JJ.

2019-11474
 (Index No. 8129/18)

[*1]William J. Jenack, as administrator of the estate of Mary Rice, et al., respondents,
v
Goshen Operations, LLC, etc., et al., appellants.

APPEAL by the defendants, in a putative class action to recover damages for a violation of Public Health Law § 2801-d, from an order of the Supreme Court (Sandra B. Sciortino, J.), dated September 10, 2019, and entered in Orange County. The order granted the plaintiffs' motion pursuant to CPLR 901 and 902 for class certification.

Caitlin Robin & Associates, PLLC, New York, NY (Henry B. Tilson, Caitlin A. Robin, and Angela Thompson-Tinsley of counsel), for appellants.
Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, White Plains, NY (Jeremiah Frei-Pearson and John D. Sardesai-Grant of counsel), for respondents.

FORD, J.

OPINION & ORDER
The issue presented on this appeal is whether the Supreme Court properly granted the plaintiffs' motion for class certification in this putative class action alleging a violation of Public Health Law § 2801-d. For the reasons set forth below, on both factual and procedural grounds, we distinguish our precedent in Olmann v Willoughby Rehabilitation & Health Care Ctr., LLC (186 AD3d 837) and determine that the court properly held, inter alia, that the plaintiffs established the commonality and superiority requirements of CPLR 901(a) and, thus, correctly granted plaintiffs' motion for class certification.
I. Relevant Facts
Mary Rice was a resident at a facility known as Sapphire Nursing and Rehab at Goshen (hereinafter Sapphire) from the Spring of 2015 until her death in March 2019. The plaintiffs allege that, in the fall of 2017, her family noticed a marked decline in services, due to what they viewed as inadequate staffing. Rice's son alleges that he observed residents being fed cold, unpalatable food, given inadequate opportunities to use the restroom, and provided infrequent bathing opportunities. Some residents were forced to sit in their own excrement, or developed bed sores from being left unattended for excessive periods of time.
Adeline Ramlow was a resident at Sapphire from March 2017 until her death in November 2017. The plaintiffs allege that her family also noticed a decline in services in the fall of 2017. The plaintiffs allege that Ramlow was often left without access to the restroom, and that her family once found her in a public area soaked in her own waste. Ramlow's family observed unpalatable food, injuries to residents due to lack of supervision, and failure of the staff to timely administer medicine, due to what Ramlow's family considered to be dangerous understaffing.
The defendant Goshen Operations, LLC, took over ownership of Sapphire in the fall of 2017. The plaintiffs allege that the marked decline in services was related to the change in [*2]ownership of the facility.
In January 2018, the New York State Department of Health issued a report that revealed multiple issues within Sapphire, including rooms in disrepair, improper food monitoring, late medications, and insufficient staffing. Specifically, the report found, inter alia, that "[b]ased on observation, interview and record review during a recertification survey, the facility did not ensure that sufficient nursing staff were available to provide the services necessary to attain the highest practicable physical, mental and psychosocial well-being of the resident population . . . in accordance with resident needs identified in the facility assessment."
On or about July 31, 2018, Rice's son and Ramlow's son commenced this putative class action against the defendants on behalf of Rice and Ramlow, respectively, as well as a class of similarly situated nursing home patients who were under the defendants' care. The complaint alleged violations of Public Health Law § 2801-d.
On or about May 13, 2019, the plaintiffs moved for class certification of a class defined as "all persons who reside, or resided, at [Sapphire] from September 1, [2017] to the present." Annexed to the motion was the expert report of Charlene Harrington, Professor Emeritus of Sociology and Nursing, Department of Social & Behavioral Sciences, School of Nursing at the University of California, San Francisco. Harrington opined that understaffing impacts the care of all residents of a nursing home facility on a systemic level, that there is a means by which understaffing can be established on a class-wide basis, and that Sapphire was understaffed. Harrington cited, among other things, 42 CFR 483.35 and 10 NYCRR 415.26(c) in support of her argument that Sapphire was not maintaining sufficient nursing staff in accordance with applicable statutes and regulations.
The plaintiffs' motion also included multiple affidavits of family members of residents and former residents at Sapphire, as well as the affidavit of a former resident, in support of the allegation that Sapphire was insufficiently staffed. These affidavits contained additional allegations of unpalatable food, medication delays, injuries due to insufficient supervision, and instances of residents sitting in their own waste for hours at a time.
In opposition, the defendants argued that the plaintiffs failed to meet the evidentiary burden to certify a class action and that the proposed class failed to satisfy the prerequisites necessary for class action certification pursuant to CPLR 901 and the discretionary considerations for a class action pursuant to CPLR 902.
In an order dated September 10, 2019, the Supreme Court granted the plaintiffs' motion and certified the class as all persons who reside, or resided, at Sapphire from September 1, 2017, through the present. The defendants appeal.
II. Legislative History of Public Health Law § 2801-d
In 1975, following an extensive investigation and legislative hearings, the Legislature enacted Public Health Law § 2801-d "[t]o provide patients in nursing homes, including facilities providing health-related services, with increased powers to enforce their rights to adequate treatment and care by providing them with a private right of action to sue for damages and other relief and enabling them to bring such suits as class actions" (Mem of State Exec Dept, 1975 McKinney's Sess Laws of NY at 1685 [emphasis added]). Liability under Public Health Law § 2801-d contemplates injury to a patient at a residential health care facility caused by a deprivation of a right conferred by contract, statute, regulation, code or rule, subject to the defense that the facility exercised all care reasonably necessary to prevent and limit the deprivation and injury to the patient (see Moore v St. James Health Care Ctr., LLC, 141 AD3d 701, 703). Accordingly, the basis for liability under Public Health Law § 2801-d "'is neither deviation from accepted standards of medical practice nor breach of a duty of care'" (Novick v South Nassau Communities Hosp., 136 AD3d 999, 1001, quoting Zeides v Hebrew Home for Aged at Riverdale, 300 AD2d 178, 179).
Public Health Law § 2801-d specifically allows for class actions (see id. § 2801-d[4]). The legislative memoranda stating support for the bill notes that, "[b]y permitting one or more nursing home patients to sue on behalf of all similarly situated patients who may also have been deprived of adequate food, sanitation, nursing care, therapy, etc., . . . the potential recovery in a lawsuit becomes large enough to encourage the private bar to bring suits on behalf of nursing home patients" (Mem of State Exec Dept, 1975 McKinney's Session Laws of NY, at 1686). As further stated in support for the bill, "the rationale for allowing nursing home patients to sue as a class for such damages is clear. They are largely helpless and isolated. Many are without even occasional visitors. Most cannot afford attorneys. It is eminently reasonable . . . to conclude that such patients [*3]cannot be required to join together as individual plaintiffs and that a class action is the most feasible and perhaps the only feasible way for them effectively to assert their common rights vis-a-vis the institution which controls virtually their entire existence" (id. [emphasis added]).
III. CPLR 901(a)
"Whether the facts presented on a motion for class certification satisfy the statutory criteria is within the sound discretion of the trial court" (Pludeman v Northern Leasing Sys., Inc., 74 AD3d 420, 422). "However, this Court is also vested with the same discretion and may exercise it even if there has been no abuse by the trial court" (id. at 422). "[I]nquiry on a motion for class action certification vis-a-vis the merits is limited to a determination as to whether on the surface there appears to be a cause of action which is not a sham" (Brandon v Chefetz, 106 AD2d 162, 168).
CPLR 901(a) sets forth the five requirements for certification of a class action:
"1. [T]he class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
2. [T]here are questions of law or fact common to the class which predominate over any questions affecting only individual members;
3. [T]he claims or defenses of the representative parties are typical of the claims or defenses of the class;
4. [T]he representative parties will fairly and adequately protect the interests of the class; and
5. [A] class action is superior to other available methods for the fair and efficient adjudication of the controversy."
"It has long been recognized that the criteria set forth in CPLR 901(a) 'should be broadly construed . . . because it is apparent that the Legislature intended [CPLR] article 9 to be a liberal substitute for the narrow class action legislation which preceded it'" (Medina v Fairway Golf Mgt., LLC, 177 AD3d 727, 728, quoting City of New York v Maul, 14 NY3d 499, 509 [internal quotation marks omitted]). Here, the defendants contend that the plaintiffs failed to satisfy the five requirements of CPLR 901(a) and, therefore, failed to establish their entitlement to class certification.
a. CPLR 901(a)(2) - Commonality
"In order to certify a lawsuit as a class action, the court must be satisfied that questions of law or fact common to the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (Aprea v Hazeltine Corp., 247 AD2d 564, 565). "The commonality requirement of CPLR 901(a)(2) 'cannot be determined by any mechanical test' and 'the fact that questions peculiar to each individual may remain after resolution of the common questions is not fatal to the class action'" (Krobath v South Nassau Communities Hosp., 178 AD3d 805, 807, quoting City of New York v Maul, 14 NY3d at 514). While New York courts have been reluctant to certify class actions alleging physical injury, courts have "uniformly certified breach of contract class actions, notwithstanding differing individual damages, where . . . there is uniformity in contractual agreements and/or statutorily imposed obligations" (Globe Surgical Supply v GEICO Ins. Co., 59 AD3d 129, 139 [citation omitted]).
b. CPLR 901(a)(5) - Superiority
"CPLR 901(a)(5) provides that a class may be certified only if 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy'" (Globe Surgical Supply v GEICO Ins. Co., 59 AD3d at 145-146). "The 'very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights'" (id. at 146, quoting Amchem Products, Inc. v Windsor, 521 US 591, 617).
c. Relevant Caselaw
In Olmann v Willoughby Rehabilitation & Health Care Ctr., LLC (186 AD3d 837), a putative class action was commenced on behalf of residents of a nursing home who allegedly sustained injuries attributable to substandard nursing care. The plaintiff in that matter set forth causes of action for both negligence and a violation of Public Health Law § 2801-d (see Olmann v [*4]Willoughby Rehabilitation & Health Care Ctr., LLC, 186 AD3d at 837-838). The plaintiff moved for class certification under both causes of action (see Olmann v Willoughby Rehabilitation & Health Care, LLC, 2020 NY Slip Op 33567[U], *3 [Sup Ct, Kings County]). The Supreme Court, inter alia, denied the plaintiff's motion for class certification with prejudice on the negligence claim, but denied the motion for class certification with leave to renew as to the plaintiff's Public Health Law § 2801-d claim, and permitted limited pre-certification discovery on that claim (see Olmann v Willoughby Rehabilitation & Health Care, LLC, 2020 NY Slip Op 33567[U], *3). The plaintiff appealed, and this Court affirmed the portion of the order denying class certification, finding that the plaintiff failed to establish the commonality and superiority requirements of CPLR 901. This Court further granted those branches of the plaintiff's motion which were to compel the defendants to comply with certain discovery demands (Olmann v Willoughby Rehabilitation & Health Care Ctr., LLC, 186 AD3d at 839).
In Fleming v Barnwell Nursing Home & Health Facilities (309 AD2d 1132), the plaintiff commenced an action alleging medical malpractice, negligence, and wrongful death after his decedent developed septic shock and passed away while she was a resident at the defendant's facility. The plaintiff moved to amend his complaint to add a cause of action pursuant to Public Health Law § 2801-d and for class action certification on the claims based on that cause of action and negligence (see Fleming v Barnwell Nursing Home & Health Facilities, 309 AD2d at 1132). The Supreme Court permitted the plaintiff to amend his complaint, but denied class certification (see id. at 1132-1133). The Appellate Division, Third Department, determined that the Supreme Court properly denied class certification on the negligence claim, because the plaintiff failed to establish commonality (see id. at 1133). However, the Third Department granted class certification on the Public Health Law claim, determining that "questions regarding defendant's violation of DOH rules affecting residents predominate," and that "a class action appears to be the superior method of adjudicating this claim" (id. at 1134).
In Passucci v Absolut Ctr. for Nursing & Rehabilitation at Allegany, LLC (2014 NY Slip Op 33459[U] [Sup Ct, Erie County], affd 125 AD3d 1313), the plaintiff commenced a putative class action claim alleging negligence and a violation of Public Health Law § 2801-d after the plaintiff's decedent passed away while a resident at the defendant's facility. The plaintiff sought class certification on both claims (see Passucci v Absolut Ctr. for Nursing & Rehabilitation at Allegany, LLC, 2014 NY Slip Op 33459[U], *3). The Supreme Court denied class certification on the negligence claim, but granted, in part, class certification on the Public Health Law § 2801-d claim, after limiting the class to only one facility owned by the defendants, and only for a specific time period (see Passucci v Absolut Ctr. for Nursing & Rehabilitation at Allegany, LLC, 2014 NY Slip Op 33459[U], *20-*23). The court further held that the putative class, as limited to a single facility, satisfied the superiority element of CPLR 901(a)(5) (see Passucci v Absolut Ctr. for Nursing & Rehabilitation at Allegany, LLC, 2014 NY Slip Op 33459[U], *25). The Appellate Division, Fourth Department, affirmed (see Passucci v Absolute Ctr. for Nursing & Rehabilitation at Allegany, LLC, 125 AD3d at 1313).
IV. CPLR 902
If all of the CPLR 901 prerequisites are satisfied, the court must then consider the discretionary factors listed in CPLR 902 (see Fleming v Barnwell Nursing Home & Health Facilities, 309 AD2d at 1134). These discretionary factors are:
"1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;
2. The impracticability or inefficiency of prosecuting or defending separate actions;
3. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
4. The desirability or undesirability of concentrating the litigation of the claim in the particular forum;
5. The difficulties likely to be encountered in the management of a class action" (CPLR 902[1] - [5]).
Here, the defendants claim that, because the analysis of causation of injury must be tailored to each [*5]individual resident, the discretionary factors of CPLR 902 weigh in favor of denying the plaintiffs' motion for class certification.
V. Evidentiary Requirements
"The plaintiffs [have] the burden of establishing compliance with the statutory requirements for class action certification under CPLR 901 and 902" (Rallis v City of New York, 3 AD3d 525, 526). "Conclusory assertions are insufficient to satisfy the statutory criteria" (Pludeman v Northern Leasing Sys., Inc., 74 AD3d at 422). "A class action certification must be founded upon an evidentiary basis" (Yonkers Contr. Co. v Romano Enters. of N.Y., 304 AD2d 657, 658). The defendants argue that the plaintiffs have not met their evidentiary burden for class action certification because their expert was not qualified to opine on the issues, their witness affidavits lack probative value, and the data from the New York State Department of Health report on which they rely is inaccurate.
VI. Analysis
The Supreme Court properly granted the plaintiffs' motion for class certification. Guided both by this Court's precedent and the notion that CPLR 901(a) is to be liberally construed (see Krobath v South Nassau Communities Hosp., 178 AD3d at 806), we hold that the plaintiffs satisfied all of the necessary factors outlined by that statute. Further, we hold that the Supreme Court properly considered the discretionary factors of CPLR 902, and that the plaintiffs met their evidentiary burden for class certification.
a. CPLR 901(a) factors - Commonality and Superiority
Unlike the plaintiffs in Olmann, Fleming, and Passucci, the plaintiffs here do not allege a negligence cause of action. Instead, the plaintiffs assert only a violation of Public Health Law § 2801-d, claiming that the defendants deprived the proposed class members of rights or benefits created or established for their well-being by the terms of state and federal statutes, rules, and regulations. To further substantiate their claim, the plaintiffs' expert cites various statutes and regulations, including 42 CFR 483.35 and 10 NYCRR 415.26(c), which require residential facilities to maintain sufficient staff. The plaintiffs' expert then opines that the defendants' facility was understaffed in violation of such statutes and regulations, and posits that understaffing harmed the putative class members on a systemic, class-wide basis, resulting in inadequate care and unsafe conditions. Accordingly, questions regarding the defendants' alleged violations of federal and/or state law clearly predominate here, satisfying the commonality requirement of CPLR 901(a)(2) (see Fleming v Barnwell Nursing Home & Health Facilities, 309 AD2d at 1134). That the putative class members may have sustained differing individual damages is not a valid reason for denying a class action in this matter (see Krobath v South Nassau Communities Hosp., 178 AD3d at 807).
As such, we distinguish this matter from our determination in Olmann, where this Court broadly determined that the plaintiffs had not satisfied the commonality requirement necessary for class action certification pursuant to CPLR 901, but where further discovery was still pending (see Olmann v Willoughby Rehabilitation & Health Care Ctr., LLC, 186 AD3d at 839). While differing individual circumstances or injuries may be fatal to class certification for negligence claims, it is sufficient for a plaintiff to prove that questions regarding violations of contract, statute, regulation, code, or rule predominate to satisfy the commonality requirement in a case alleging a violation of Public Health Law § 2801-d (see Fleming v Barnwell Nursing Home & Health Facilities, 309 AD2d 1132; Passucci v Absolut Ctr. for Nursing & Rehabilitation at Allegany, LLC, 2014 NY Slip Op 33459[U]; see generally City of New York v Maul, 14 NY3d at 514).
We further distinguish Olmann and hold that the plaintiffs here were able to establish that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As stated succinctly in support of the bill to enact Public Health Law § 2801-d, "a class action is the most feasible and perhaps the only feasible way for [nursing home patients] effectively to assert their common rights vis-a-vis the institution which controls virtually their entire existence" (Mem of State Exec Dept, 1975 McKinney's Sess Laws of NY at 1686 [emphasis added]). Accordingly, as the putative class members were all residents of the defendants' nursing home facility during the time at which the alleged decline in services occurred, we hold that the plaintiffs have also satisfied the superiority requirement of CPLR 901(a)(5) (see Globe Surgical Supply v GEICO Ins. Co., 59 AD3d at 145-146).
b. Remaining CPLR 901(a) factors
Contrary to the defendants' contentions, the plaintiffs also satisfied the numerosity requirement of CPLR 901(a)(1) (see Dornberger v Metropolitan Life Ins. Co., 182 FRD 72, 77 [SD [*6]NY]), the typicality requirement of CPLR 901(a)(3) (see Pludeman v Northern Leasing Sys., Inc., 74 AD3d at 424), and the adequacy of representation requirement of CPLR 901(a)(4) (see Ferrari v National Football League, 153 AD3d 1589, 1592). Therefore, we find that the plaintiff has satisfied all five requirements of CPLR 901(a).
c. CPLR 902
The discretionary factors of CPLR 902 also weigh in favor of granting class certification. As noted by the Third Department in Fleming, "[p]resumably, aged and infirm nursing home residents are not interested in individually controlling the prosecution of the action" (Fleming v Barnwell Nursing Home & Health Facilities, 309 AD2d at 1134). There is no evidence in this record that there is any litigation concerning the controversy already commenced, or any indication of issues with concentrating the litigation in Orange County, where the facility is located. As discussed above, it is more practical and efficient for the plaintiffs to prosecute this Public Health Law § 2801-d claim as a class action than as separate, individual actions, as nursing home patients are often isolated and unable to afford individual attorneys, and the potential recovery in a class action suit becomes large enough to encourage attorneys to bring suits on behalf of nursing home patients (see Mem of State Exec Dept, 1975 McKinney's Sess Laws of NY at 1686). Further, there is no merit to the defendants' contention that this matter is inefficient to prosecute as a class action because the analysis of causation of injury must be tailored to each individual resident, as the potential injury to putative class members in this matter stems from the violation of a statutorily imposed obligation, not physical injury due to negligence (see Globe Surgical Supply v GEICO Ins. Co., 59 AD3d at 138-139).
d. Evidentiary Requirements
Finally, contrary to the defendants' contention, the plaintiffs met their burden of establishing compliance with the statutory requirements for class action certification. The professional background of the plaintiffs' expert was sufficient to support the inference that she was possessed of the requisite skill, training, education, knowledge, or experience from which it can be assumed that the opinion rendered was reliable, and the contention that her opinion was speculative is without merit (see Cerrone v North Shore-Long Is. Jewish Health Sys., Inc., 197 AD3d 449, 451). The plaintiffs' witness affidavits, which contained first-hand observations of inadequate staffing and care for residents at the defendants' facility, did not lack probative value. Further, any contradiction in the data used by the parties may raise triable issues of fact upon consideration of the merits of the matter, but does not preclude class certification at this point in the litigation (see Pludeman v Northern Leasing Sys., Inc., 74 AD3d at 422).
VII. Conclusion
Accordingly, the Supreme Court properly granted the plaintiffs' motion for class certification. We emphasize that upholding class certification at this early stage in litigation does not indicate an opinion on the merits of the plaintiffs' cause of action; rather, it permits the plaintiffs and the putative class members the opportunity to collectively prove their claim (see City of New York v Maul, 14 NY3d at 514).
Therefore, the order is affirmed.
DILLON, J.P., CHAMBERS and WAN, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court